# FOR PUBLICATION



FILED

Jun 25 2014, 10:58 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DAVID PAUL ALLEN**
Hammond, Indiana

ATTORNEYS FOR APPELLEES:

**STEVEN J. SERSIC**
**KEVIN C. SMITH**
**KRISTINA KANTAR**
Smith, Sersic
Munster, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| HUGO TORRES, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1306-PL-205 |
| | ) | |
| CITY OF HAMMOND and CITY OF | ) | |
| HAMMOND BOARD OF PUBLIC | ) | |
| WORKS AND SAFETY, | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable John M. Sedia, Judge
Cause No. 45D01-1302-PL-15

**June 25, 2014**

**OPINION - FOR PUBLICATION**

**MAY, Judge**

Hugo Torres appeals a trial court decision upholding an order by the City of Hammond Board of Public Works and Safety ("the City") to demolish his house. As Torres did not have the benefit of an impartial decision maker in the proceeding that ordered demolition of his property, we reverse.[1]

## FACTS AND PROCEDURAL HISTORY

Torres owns a residence in Hammond. In October of 2012, the City declared the residence uninhabitable. The building commissioner issued an order to repair or demolish it. In January 2013 the City conducted a hearing on the order. The board that conducted the hearing and ordered the demolition was comprised of the city controller, the city engineer, and the city attorney. As the city attorney served on the board, the City's case was argued by his assistant city attorney. After the hearing, the board found the house posed a health and safety danger to nearby occupied residences and ordered the house demolished. The trial court affirmed the City's order.

## DISCUSSION AND DECISION

Torres was deprived of his due process right to an impartial decision maker when the Hammond city attorney served as a deciding member on the board of public works and safety at a hearing where the assistant city attorney represented the City.

Due process requires a neutral, or unbiased, adjudicatory decision maker. Scholars and judges consistently characterize provision of a neutral decision maker as one of the three or four core requirements of a system of fair adjudicatory decision making. *Rynerson v. City*

---

[1] Because we reverse on that ground, we need not address Torres' other allegations of error.

2

*of Franklin*, 669 N.E.2d 964, 967 (Ind. 1996). In *City of Hammond v. State ex rel. Jefferson*, 411 N.E.2d 152, 153 (Ind. Ct. App. 1980), we determined Jefferson's hearing was improper when, as in the case before us, an assistant city attorney represented the city while the city attorney sat as a decision making member of the public works and safety board. *Id*. at 155.

Jefferson was alleged to have violated rules and tardiness policies, and the Fire Chief recommended his dismissal. Proceedings were conducted before the Hammond Board of Public Works and Safety, of which the city attorney, McIllwain, was a member. McIlwain indicated he would serve only in his capacity as a board member, and the assistant city attorney represented the city in the action against Jefferson. The board suspended Jefferson and placed him on probation. Jefferson appealed the board's findings to the trial court, which reversed the board's decision. The trial court determined Jefferson was not afforded a fair hearing because the city attorney's office participated in both the prosecution and decision-making processes.

We agreed, relying on *City of Mishawaka v. Stewart*, 261 Ind. 670, 310 N.E.2d 65 (1974), in which our Indiana Supreme Court held a city attorney cannot serve the dual functions of board member and advocate for the city in the same proceeding. We explained in *Jefferson*:

> We do not believe, following the language and reasoning of the Court in [*Stewart*], that the appearance of impropriety evident in the instant case is in any respect cured merely because the city attorney's vote against Jefferson was not necessary to constitute a quorum and to order his suspension. Thus, although the City of Hammond argues in its brief that even apart from the city attorney, two members of the statutory three-member board voted in favor of suspension, we find compelling the following language supporting the conclusion in [*Stewart*]:

3

> In the case before us, this viewpoint would be even more significant because without the city attorney, the board was without a quorum. However, it is our opinion that the appearance of bias arising from the duality in this case overshadows the actualities, whatever they may be, to such extent as to invalidate the proceedings.
>
> Moreover, we consider it impossible, in cases such as the one at bar, to determine in what manner the combination of the city attorney's improper participation in the proceedings and presence on the Board while his assistant prosecuted the case may have influenced the thinking of the other voting decisionmakers.
>
> Similarly, we do not believe the instant case is distinguishable from [*Stewart*] merely because the city attorney utilized his assistant to prosecute the case against the fireman and thus did not personally assume conflicting roles. *See State ex rel. Goldsmith v. Superior Court of Hancock County*, (1979) Ind., 386 N.E.2d 942, where it is suggested that a deputy prosecuting attorney would be disqualified in any circumstance where the prosecuting attorney becomes a witness or is otherwise disqualified from acting in his official capacity. In this context, we note the Court in [*Stewart*], in disapproving the language of *Guido v. City of Marion*, (1972) 151 Ind. App. 435, 280 N.E.2d 81, condemned the appearance of bias even where an assistant city attorney is employed, stating "(n)or do we think the basic problem was solved in Guido's case (Guido was a police officer brought before the appropriate board in a similar proceeding) by the injection of the assistant city attorney as counsel, while the city attorney proceeded to participate in the determination." [*Stewart*], 261 Ind. at 681, 310 N.E.2d at 71.

*Jefferson*, 411 N.E.2d at 154 (emphases and some citations omitted).

In *Rynerson*, our Indiana Supreme Court noted the "inquiry into whether the arrangement before us violates due process is subject to the presumption that the members of the board are persons of conscience and intellectual discipline, capable of judging the particular controversy fairly and will act with honesty and integrity." 669 N.E.2d at 968

4

(internal quotation omitted). We acknowledge that presumption. But the inquiry is also subject to

> a realistic appraisal of psychological tendencies and human weaknesses as to whether an administrative body adjudicating a matter in which an individual who sits as a member of the board in other matters *poses such a risk* of actual bias or prejudgment[2] that the practice must be forbidden if the guarantee of due process is to be adequately implemented.
> * * * * *
> [I]t is appropriate to take into account concerns about the practical operation of administrative agencies, including their variety, complexity, and flexibility, when analyzing whether their administrative mechanisms violate due process.

*Id*. (emphasis and footnote added) (internal quotations and citations omitted).

The *Rynerson* Court found no due process violation when the city attorney served on the City of Franklin Board of Public Works and Safety. But there, the city attorney recused himself from the board in order to represent the city in the disciplinary proceedings against Rynerson. The city attorney could participate as a member of the Board as long as he did not participate in the proceedings before it. *Id.* at 970.

The city attorney's recusal from the board in order to serve as the city's advocate in *Rynerson* makes *Rynerson* inapposite to the case before us, and *Jefferson* controls. We must accordingly hold Torres' due process rights were violated where an assistant city attorney argued the case against Torres before a board on which the city attorney participated as a

---

[2] The dissent correctly notes Torres does not "point to any evidence . . . establishing the city attorney's actual bias or prejudice." (Slip op. at 10.) But *Rynerson* does not require Torres to provide evidence of actual bias or prejudice. Rather, *Rynerson* instructs us to consider whether the makeup of the board "*poses such a risk* of actual bias or prejudgment that the practice must be forbidden[.]" 669 N.E.2d at 968 (emphasis added). In the case before us, as in *Stewart*, "the *appearance* of bias arising from the duality in this case overshadows the actualities, whatever they may be, to such extent as to invalidate the proceedings." 261 Ind. at 70, 310 N.E.2d at 680 (emphasis added).

member.  We reverse the trial court's order.

Reversed.

VAIDIK, C.J., concurs.

RILEY, J., dissents with separate opinion.

6

# IN THE
# COURT OF APPEALS OF INDIANA

HUGO TORRES,                              )
                                         )
    Appellant-Plaintiff,             )
                                         )
        vs.                      )     No. 45A03-1306-PL-205
                                         )
CITY OF HAMMOND and CITY OF              )
HAMMOND BOARD OF PUBLIC                  )
WORKS AND SAFETY,                        )
                                         )
    Appellees-Defendants.            )

**RILEY, Judge, dissenting**

I respectfully dissent from the majority's conclusion, reversing the trial court's decision on the ground that Torres "did not have the benefit of an impartial decision maker in the proceeding" before the Board. Slip Op. p. 2. Focusing on the membership of the Board, which consisted of the city controller, the city engineer, and the city attorney, the majority decided that in line with *City of Hammond v. State ex rel. Jefferson*, 411 N.E.2d 152 (Ind. Ct. App. 1980), a city attorney may not sit on a decision-making board while the assistant city

7

attorney[3] acts as prosecutor for the city. I do not find *Jefferson* to be controlling of the case at bar.

As noted by the majority, due process requires a neutral, unbiased, or adjudicatory decision-maker. *Rynerson v. City of Franklin*, 669 N.E.2d 964, 967 (Ind. 1996). Scholars and judges consistently characterize the provision of a neutral decision-maker as one of the three or four core requirements of a system of fair adjudicatory decision-making. *Id.* Our supreme court first confronted the due process requirement of a neutral decision-maker in *City of Mishawaka v. Stewart*, 310 N.E.2d 65 (Ind. 1974), where a city firefighter faced disciplinary charges before the city's public works and safety board. Concluding that it was "imperative that a strict test of impartiality be applied to the factfinding process," the court found that it was improper for the Mishawaka city attorney both to prosecute the disciplinary complaint against the firefighter and chair the board responsible for adjudicating guilt and imposing sanctions. *Id.* at 69. Building on this principle, we held In *Jefferson* that a fair hearing is not provided when an assistant city attorney represents the city in a hearing in which the city attorney sits as a decision-making member of the public works and safety board. *Jefferson*, 411 N.E.2d at 153.

Although both *Jefferson* and *Stewart* concerned firemen disciplinary hearings, our supreme court revisited these principles and adopted them for other administrative decision-makers in adjudicative proceedings in *Rynerson*. The majority determined *Rynerson*

---

[3] It should be noted that, in this instance, the assistant city attorney was an outside or contract counsel. However, I.C. § 36-4-9-12 states that "Officers, departments, boards, commissions, and other agencies of the city may not employ attorneys without the authorization head of the department of law."

8

inapposite because of the city attorney's recusal from the board in order to serve as the city's advocate; however, in its haste to disregard the case, the majority ignores *Rynerson's* broader question in which our supreme court evaluated "whether it is constitutional for a member of an administrative body to serve as an advocate or prosecutor before the body in a certain type of adjudicative proceeding so long as the member does not participate in any such adjudicative proceeding." *Id*. at 967.

Relying on *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), the *Rynerson* court formulated a two-step inquiry applicable to the analysis of whether a combination of the prosecutorial or advocacy function and the adjudicative function in the same administrative decision-makers violates due process. Commencing from the presumption that "the members of the board are persons of conscience and intellectual discipline, capable of judging the particular controversy fairly and will act with honesty and integrity," the combination of functions must be subject to

> a realistic appraisal of psychological tendencies and human weaknesses as to whether an administrative body adjudicating a matter in which an individual who sits as a member of the board in other matters poses such a risk of *actual bias or prejudgment* that the practice must be forbidden if the guarantee of due process is to be adequately implemented.

*Id*. at 968 (citing *Withrow*, 421 U.S. at 55) (emphasis added).

The second step of the inquiry is more practical and focused on "concerns about the practical operation of administrative agencies, including their variety, complexity, and flexibility, when analyzing whether their administrative mechanisms violate due process." *Rynerson*, 669 N.E.2d at 968.

9

Giving due consideration to the presumption of honesty, integrity, and conscientiousness, I find that the present situation is free from an appearance of impropriety as Torres fails to point to any evidence—besides the city attorney's mere presence on the Board—establishing the city attorney's actual bias or prejudice.[4] Nor was there any actual bias or prejudice on the part of the two other participating members of the Board.[5]

Moreover, turning to the practical step of the *Rynerson* inquiry and considering whether the city attorney could "easily" be replaced from the Board, our supreme court pointed out in *Rynerson*, that a city's board of public works and safety

> is responsible for an enormous amount and variety of city business. The board supervises the streets, alleys, sewers, public grounds and other property of the city and is responsible for their repair and condition. It is responsible for the custody and maintenance of all real and personal property of the city and designs, orders, contracts for and executes the construction of all buildings and other structures needed for public purposes and all work required to improve or repair any real or personal property owned or used by the city. The board has substantial condemnation, rental and purchase powers, authority to build, alter and maintain drains and severs, and responsibility for refuse removal. . . . As can be seen from this partial list, much of this work will require the assistance of the city attorney. . . .

*Id*.at 969-70.

---

[4] It should be noted that due process itself does not prohibit the city attorney from serving on a three-member administrative board, while his assistant city attorney is serving as a prosecutor. In fact, as pointed out in *Rynerson*, *Withrow* flatly rejected this proposition: "It is also very typical for the members of administrative agencies to receive the results of investigations, to approve the filing of charges or formal complaints instituting enforcement proceedings and then to participate in the ensuing hearings. This mode of procedure . . . does not violate due process of law." *Rynerson*, 669 N.E.2d at 969 n.3 (citing *Withrow*, 421 U.S. at 56).

[5] As such, I find it curious that Torres did not allege a due process violation because of the city engineer's membership on the Board. As city engineer, he was necessarily closely aligned with the building commissioner, the housing inspectors, and the Hammond Inspections Department who condemned Torres' property to demolition and whose evidence the B oard considered in reaching its decision.

Therefore, as the proceeding in the instant case involved the repair and demolition of an uninhabitable residence, the city attorney could participate in the hearing as a member of the Board. Absent some demonstrable actual bias, I cannot conclude that Torres' due process rights were violated. I would affirm the trial court's decision in every respect.